# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-51020
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 18, 2016

Lyle W. Cayce
Clerk

CRISTINA CRUZ GROST, M.D.,

　　　　Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

　　　　Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:13-cv-158

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

PER CURIAM:*

　　Cristina Cruz Grost appeals the district court's summary judgment dismissal of her claim for intentional infliction of emotional distress. For the reasons that follow, we affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-51020

**I.**

From 2006 to 2012, Grost worked as a contract psychiatrist for Spectrum Healthcare Resources at the inpatient unit of William Beaumont Army Medical Center in El Paso. The United States owned and operated the Medical Center, but it did not employ Grost directly.

Grost claims that beginning in May 2011, Major Artin Terhakopian and Colonel Ron Moruzzi, two employees at the Medical Center, subjected her to extreme and outrageous behavior designed to inflict emotional distress and anxiety and cause her to quit her job. Examples of the alleged behavior include: excluding Grost from social gatherings; interfering with her care for her patients; deliberately reducing her patient load and then complaining that she was avoiding work; increasing her work load while assigning fewer cases to others; needlessly questioning her credentials; calling her "neurotic"; and telling her to "park [her] ethics and [her] morals outside of the door". Grost claims these actions were intentional, reckless, extreme and outrageous, resulted in severe emotional distress to her and harm to her patients, and ultimately caused her to resign.

Grost then filed suit against the United States, asserting multiple causes of action under the Federal Tort Claims Act (FTCA), including a claim for intentional infliction of emotional distress. In response to the government's motion to dismiss, the district court dismissed most of the claims with prejudice. The court dismissed without prejudice a few of the claims including Grost's claim for intentional infliction of emotional distress. It allowed her to replead the intentional infliction claim so long as it did not arise out of conduct

No. 15-51020

that would constitute libel or slander as the FTCA preserves sovereign immunity for those intentional torts.[1]

Grost filed an amended complaint. Noting that the changes to Grost's complaint only related to her intentional infliction of emotional distress claim, the district court determined that she sought to pursue only that claim. It later granted summary judgment on that claim in the government's favor, finding that Grost failed to demonstrate a fact issue on at least two elements of that claim.

## II.

We review a grant of summary judgment *de novo*. *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770 (5th Cir. 2000). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under Texas law,[2] a plaintiff claiming intentional infliction of emotional distress must prove that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's

---

[1] Intentional infliction of emotional distress is not one of the intentional torts listed in section 2680(h) for which the United States retained its sovereign immunity. *See* 28 U.S.C. § 2680(h). The FTCA thus bars Grost's intentional infliction of emotional distress claim only to the extent it arises out of conduct that would establish an excepted cause of action like libel or slander. *Truman v. United States*, 26 F.3d 592, 594–95 (5th Cir. 1994).

[2] The FTCA incorporates the law of the state where the alleged tort took place. 28 U.S.C. § 1346(b)(1).

No. 15-51020

actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003). The district court held that Grost could establish neither extreme and outrageous conduct nor that she suffered severe emotional distress. Because we agree that the challenged conduct does not satisfy the tort's high threshold for extreme and outrageous behavior, we address only that element.

A defendant's conduct is "extreme and outrageous" if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). Conduct that is merely rude or insensitive or that amounts to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" does not rise to the level of "extreme or outrageous conduct." *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999). Tortious, malicious, or even criminal intent is not sufficient to establish the tort if the conduct is not objectively outrageous. *Id.* at 616.

Texas cases illustrate how demanding this standard is. In one, a Texas Court of Appeals affirmed a grant of summary judgment when fellow employees told the plaintiff to "shut up" and not speak unless given permission, beckoned her "like a dog," and refused to acknowledge her in the hallway. *Williams v. Shell Expl. and Prod. Co.-Americas*, No. 14-13-00309-CV, 2014 WL 3555741, at *4–*5 (Tex. App.—Houston [14th Dist.], July 17, 2014, no pet.) (mem. op.) (explaining that although the complained of remarks might be construed as rude and insulting, they did not rise to the level of terrorizing,

4

threatening, and assaultive).  In another, the court found that the supervisor's alleged rudeness, anger, name-calling, and criticism directed at the employee was not extreme and outrageous.  *Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 13–15 (Tex. App.—Tyler 2000, pet. denied) (holding that the alleged activities constituted part of the ordinary employment relationship and were not actionable as a matter of law under the tort).  Finally, the Supreme Court of Texas held that a plaintiff failed to establish extreme and outrageous conduct even though the defendants made negative comments that were reflected in plaintiff's tenure file, repeatedly recommended that plaintiff should not be allowed to continue on tenure track, restricted plaintiff's speech regarding his tenure folder, and allegedly assigned him an excessive case load.  *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999).

In contrast, Texas's highest court found conduct that met the "extreme and outrageous" standard in *GTE Southwest*.  In that case, the supervisor engaged in a pattern of abusive and harassing conduct, which included daily use of "the harshest vulgarity," frequent physical and verbal assaults, and repeatedly calling one employee into his office to stare at her for extended periods of time.  *GTE Sw.*, 998 S.W.2d at 613–614.  The court found that the supervisor created a "den of terror" for the employees and thus supported the jury's finding that the conduct was extreme and outrageous.  *Id.* at 617.

This case is much more akin to those in which Texas courts found that the conduct could not be viewed as extreme and outrageous.  Grost contends that a long list of incidents involving Moruzzi and Terhakopian—when considered as a whole—amounts to extreme and outrageous behavior.  The most notable incidents include the following: trying to take away her office and

No. 15-51020

change her job; chastising her; forcing her to justify her job; making her defend her treatment of patients; calling her names; and refusing to shake her hand. Even when viewing the evidence in a light most favorable to Grost, we do not find that these incidents, though they could certainly be considered rude or even insulting, rise to the level of extreme and outrageous conduct as Texas courts have defined those terms.

## III.

Because Grost failed to produce evidence creating a fact issue as to whether Defendant's conduct was extreme and outrageous, the district court properly granted summary judgment. The judgment is AFFIRMED.